**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250366-U

Order filed July 23, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0366 Circuit No. 20-CF-300 |
| ROBERT A. GROMM, | ) ) ) | Honorable Howard C. Ryan Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Brennan concurred in the judgment.
Justice Holdridge specially concurred.

_____

**ORDER**

¶ 1    *Held*:  (1) Defendant failed to establish plain error where the record did not clearly show a constitutional speedy-trial right violation. (2) Defendant's conviction for unlawful possession of a weapon by a felon is facially constitutional. Affirmed.

¶ 2    Defendant, Robert A. Gromm, appeals from his conviction for unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2020)), arguing (1) his constitutional right to a speedy trial was violated and (2) the UPWF statute violated both the United States and Illinois Constitutions. We affirm.

¶ 3                               I. BACKGROUND

¶ 4        On August 25, 2020, defendant was indicted on one count of UPWF, and the court issued a bench warrant for his arrest. On March 2021, defendant had not yet been served with the warrant, and the case was placed on the warrant calendar. Defendant was arrested on December 30, 2023, and the case was reinstated.

¶ 5        On January 3, 2024, defendant advised the court he intended to hire private counsel, and the court granted him pretrial release pursuant to an agreed order.

¶ 6        Defendant was arraigned on January 26, 2024. At the hearing, defendant stated his intent to proceed *pro se*. The court questioned him about his ability to represent himself and admonished him on the consequences of proceeding without counsel. See Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Defendant elected to proceed *pro se*, and the court accepted his waiver of counsel. The State tendered defendant a copy of the indictment, and defendant stated he had already received a copy. Defendant then made an oral request for a "fast and speedy" jury trial. The court informed defendant he needed to file a written demand to assert his statutory speedy-trial right, and that it would nonetheless schedule trial "within 120 days." Defendant interjected, "I thought it was 160 days if you are out." The court agreed and set the matter for a May 2024 jury trial.

¶ 7        The State moved for a continuance ten days before the trial date, citing a material witness's unavailability. Defendant renewed his oral request for a speedy trial, and the court granted the State's motion over defendant's objection. The court continued trial until August 2024.

¶ 8        On the morning of trial, and after the jury had been empaneled, defendant moved for a continuance due to health issues. The court granted defendant's motion and declared a mistrial. It reset the case for a December 2024 trial.

¶ 9    In November 2024, the court reset the trial date to February 2025 on its own motion, noting the presiding judge was experiencing medical issues. Defendant renewed his oral request for a speedy trial.

¶ 10    The State moved for a continuance four days before the February 2025 trial date, citing a scheduling conflict. The court granted the motion over defendant's objection.

¶ 11    A jury trial was ultimately held on April 7, 2025, 48 days after the continued February 2025 trial date. At the close of trial, the jury found defendant guilty of UPWF. In June 2025, the court sentenced defendant to three years' imprisonment. In July 2025, defendant moved to stay the sentence until the supreme court could review the case to "make sure [his] constitutional rights are not being violated." The motion stated, without elaboration, that defendant's "fast and speedy trial right was overly violated." The court denied the motion, and this appeal followed.

¶ 12                                II. ANALYSIS

¶ 13    Defendant raises two constitutional contentions on appeal. First, he argues his constitutional speedy-trial right was violated. Second, he argues the UPWF statute, 720 ILCS 5/24-1.1(a) (West 2020), is facially unconstitutional. We address each contention in turn.

¶ 14                                A. Speedy Trial

¶ 15    Preliminarily, defendant does not raise a statutory speedy-trial violation under section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2020)). Instead, he argues his speedy-trial right was violated under the United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. He cites an "unexplained" 40-month delay between his indictment and arrest and points to three pretrial delays that were "either unreasonable or attributable to the State." The State responds that no speedy-trial violation occurred, and that

defendant either waived or forfeited any speedy-trial contention because he never moved for discharge on that basis and because he failed to develop the record to support his claim.

¶ 16                                  1. *Failure to Preserve Issue*

¶ 17        Waiver is the intentional relinquishment of a known right. *People v. Ratliff*, 2024 IL 129356, ¶ 26. The State's waiver theory is not substantiated by the record. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *People v. Stroud*, 208 Ill. 2d 398, 403 (2004). "Courts may not presume a defendant's waiver of a fundamental right from his inaction." *People v. Crane*, 195 Ill. 2d 42, 58 (2001). Here, defendant's silence as to the 40-month postindictment delay was not an intentional relinquishment of a *known* right. The record does not reflect defendant—who was *pro se*—knew that the constitutional speedy-trial right extends to postindictment, pre-arrest delays. See *People v. Leavitt*, 2014 IL App (1st) 121323, ¶ 95. Nor does it reflect he knew that even a one-year delay was "presumptively prejudicial" and triggered the constitutional balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972). See *People v. Johnson*, 2023 IL App (4th) 210662, ¶ 59; *People v. Bradshaw*, 2020 IL App (3d) 180027, ¶ 28; *Crane*, 195 Ill. 2d at 52-53. Therefore, because the record does not reflect an intentional relinquishment of a known right, we decline to find waiver.

¶ 18        Defendant's forfeiture of the claim, however, is evident from the record. Unlike waiver, forfeiture is the failure—inadvertent or otherwise—to make a timely assertion of a right.[1] *Ratliff*, 2024 IL 129356, ¶ 26. "Generally, a claim is forfeited when not raised both contemporaneously

---

[1]The special concurrence appears to conflate waiver and forfeiture; it also suggests self-represented litigants are excused from the requirement to properly preserve issues for appeal. *Infra* ¶ 55. A defendant's *pro se* status does not relax ordinary preservation rules. See *People v. Richardson*, 2011 IL App (4th) 100358, ¶ 12 ("[W]here a defendant elects to proceed *pro se*, he is responsible for his representation and is held to the same standards as any attorney.").

and specifically in a posttrial motion." *People v. Okoro*, 2022 IL App (1st) 201254, ¶ 50. The record reflects defendant did not assert a constitutional speedy-trial violation before trial or in a posttrial motion. His first speedy-trial request was followed by his assertion that the applicable speedy-trial period "was 160 days if you are out[,]" clearly tying his request to the *statutory* right. See 725 ILCS 5/103-5(b) (West 2020) (out-of-custody defendant's written speedy-trial demand triggers 160-day clock). Defendant renewed his speedy-trial request a few times. None of those requests, however, alerted the court to a constitutional speedy-trial claim, much less one challenging the postindictment delay.

¶ 19        Defendant's motion to stay sentence also failed to preserve the issue. The motion's allegation of an "overly violated" speedy-trial right was a conclusory assertion made in passing, and its reference to potential constitutional violations was far too vague to alert the trial court to the specific contention now raised on appeal. Accordingly, we find defendant's constitutional speedy-trial contention forfeited.

¶ 20                                    2. *Plain-Error Inquiry*

¶ 21        Defendant nevertheless asks this court to excuse his forfeiture under the plain-error doctrine. This doctrine, rooted in Illinois Supreme Court Rule 615(a), allows a reviewing court to consider unpreserved claims of error when

> "(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Lewis*, 234 Ill. 2d 32, 42-43 (2009).

Defendant asks us to review his speedy-trial claim under the second prong of the plain-error test. See *id.* According to him, the State incurred a speedy-trial violation so severe it undermined trial fairness and the integrity of the judicial process. Defendant bears the burden of demonstrating the purported violation from the existing record. *People v. Hillier*, 237 Ill. 2d 539, 549 (2010) (the plain-error exception applies only when the record clearly shows an error affecting substantial rights); *Lewis*, 234 Ill. 2d at 43 (defendant bears burden of persuasion under both prongs of plain-error test). To evaluate defendant's speedy-trial claim for plain error, we must first determine whether defendant has established a clear and obvious error under current law. *People v. Hale*, 2025 IL App (3d) 220510, ¶ 102 (citing *People v. Givens*, 237 Ill. 2d 311, 329 (2010)). This requires a substantive review of the contested issue. *Lewis*, 234 Ill. 2d at 43.

¶ 22 The United States and Illinois Constitutions both guarantee the right to a speedy trial. *People v. Staten*, 159 Ill. 2d 419, 426 (1994). The United States Supreme Court has recognized four factors that courts may use to assess whether a defendant's right to a speedy trial has been violated: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the speedy-trial right, and (4) the prejudice to the defendant because of the delay. *Crane*, 195 Ill. 2d at 48 (citing *Barker*, 407 U.S. at 530-32). The length of the delay is the threshold factor. *People v. Silver*, 376 Ill. App. 3d 780, 784 (2007). The court balances the remaining factors only after finding the length of the delay "presumptively prejudicial." *Id.*

¶ 23                                a. Length of the delay

¶ 24 The 40-month delay between defendant's indictment and arrest is presumptively prejudicial. See *Crane*, 195 Ill. 2d at 52-53 (delays approaching one year have been deemed presumptively prejudicial). This delay triggers the need to consider the remaining *Barker* factors.

¶ 25                                b. Reasons for the delay

6

¶ 26       Courts assign different weight to the reasons for delay. *Id.* at 53. Some reasons are valid and excusable, such as a judge's illness or the State's inability to locate a witness despite diligent efforts. *Id.* at 53-54. Other reasons weigh heavily against the State, such as the State's intentional delay to gain a tactical advantage. *Id.* at 53. Some "more neutral" reasons weigh slightly in the defendant's favor, such as police negligence and a crowded court docket. *Id.*

¶ 27       On the record before this court, the reasons-for-delay factor is inconclusive. Although the 40-month postindictment delay is significant, it is the least developed part of the record. It is unclear whether defendant was aware—in 2020—that a warrant was out for his arrest. The record is silent as to whether the postindictment delay was due to the State's inaction, defendant's evasion, or some other circumstance. *Cf. People v. Yaeger*, 84 Ill. App. 3d 415, 421 (1980) (postindictment delay was attributable to the State where police failed to diligently search for defendant).

¶ 28       It is well settled that plain-error review is limited to errors plainly apparent *from the record*. See *Hillier*, 237 Ill. 2d at 549; *People v. Hampton*, 149 Ill. 2d 71, 102 (1992); *People v. Young*, 128 Ill. 2d 1, 46 (1989); *People v. Foster*, 76 Ill. 2d 365, 380 (1979). And as the appellant seeking plain-error review, defendant has the burden of persuasion, that is, he must affirmatively demonstrate entitlement to relief from the existing record. See *Lewis*, 234 Ill. 2d at 43 (defendant bears burden of persuasion under plain-error test); *In re Edgar C.*, 2014 IL App (1st) 141703, ¶ 82 (appellant bears "burden to provide this court with a sufficient record to grant the relief he requests on the claims that he raises.").

¶ 29       Defendant attempts to meet his burden by relying on the record's silence as to the reasons for the postindictment delay. That silence, however, is the product of defendant's apparent willingness, in the months following his arrest, to overlook the delay and instead opt for trial. Had defendant challenged the postindictment delay in the trial court, the State would have had the

7

"burden to provide justification" for it. See *Crane*, 195 Ill. 2d at 53. Defendant, however, never challenged the postindictment delay in the trial court. The State was therefore "under no obligation to justify it." See *In re Edgar C.*, 2014 IL App (1st) 141703, ¶ 105 (State was not obligated to justify *Terry* stop because respondent never challenged stop in trial court). Defendant may not "gain the advantage of obtaining a reversal through his own failure to act." *People v. Ramsey*, 239 Ill. 2d 342, 439 (2010); see *People v. Tatum*, 389 Ill. App. 3d 656, 670 (2009) ("[A] *pro se* defendant is held to the same standards as an attorney."). We therefore reject defendant's attempt to carry his burden by exploiting a factual void created by his own inaction.

¶ 30        The supreme court's decision in *Hillier* is instructive. There, the court summarily rejected a defendant's argument on direct appeal that his fifth amendment rights were violated. *Hillier*, 237 Ill. 2d at 548-49. The court emphasized that defendant, in addition to not invoking plain-error review, failed to make a record on the issue in the trial court. *Id.* at 549. The court explained,

> " '[T]he plain error exception will be invoked only where the record *clearly* shows that an alleged error affecting substantial rights was committed.' " (Emphasis in original.) [Citations.] Because defendant failed to make a record on this issue in the trial court, the record cannot clearly demonstrate a violation of defendant's fifth amendment rights." *Id.*

The supreme court's logic applies here. Because defendant failed to make a record on the postindictment-delay issue in the trial court (see *supra* ¶ 29), the record cannot clearly demonstrate a speedy-trial violation as to that 40-month period.

¶ 31        After defendant's arrest, a few more delays occurred. The State occasioned two trial continuances, the court occasioned one trial continuance, and defendant occasioned one mistrial. Only the February 2025 continuance on account of the State's scheduling conflict weighs in

defendant's favor. This continuance resulted in a 48-day delay before trial was ultimately held in April 2025. The State's other continuance was due to its inability to locate a material witness; the court's *sua sponte* continuance was due to the presiding judge's medical issues; and the mistrial was due to defendant's health issues. The pretrial continuances do not weigh in defendant's favor where only a 48-day delay is attributable to the State.

¶ 32                                              c. Defendant's assertion of his right

¶ 33         The failure to assert one's speedy-trial right " 'make[s] it difficult for a defendant to prove that he was denied a speedy trial.' " *Crane*, 195 Ill. 2d at 58 (quoting *Barker*, 407 U.S. at 532). Although defendant repeatedly requested a speedy trial in the trial court, the assertion-of-right factor does not weigh in defendant's favor.

¶ 34         Critically, defendant's speedy-trial requests are relevant only in relation to the 48-day delay attributable to the State. See *supra* ¶ 31. They are not relevant to the longest segment of the delay—the 40-month period between the August 2020 indictment and the December 2023 arrest. Instead of moving for discharge or voicing any concerns about his indictment dating back to 2020, defendant requested a "fast and speedy" jury trial, thereby electing to proceed without objection to the postindictment delay. Defendant's repeated requests for trial, rather than discharge, are inconsistent with his current position that the postindictment delay amounted to a constitutional violation.

¶ 35         Additionally, defendant's speedy-trial requests bypassed the very mechanism the legislature created to implement the constitutional guarantee. See *Crane*, 195 Ill. 2d at 48 (speedy-trial statute was created to implement constitutional guarantee). Section 103-5 requires an out-of-custody defendant to file a *written* demand to trigger the 160-day speedy-trial clock. 725 ILCS 5/103-5(b) (West 2020). At no point did defendant file a written speedy-trial demand, despite being

9

so advised at his arraignment. Section 103-5 was enacted "[b]ecause of the imprecise nature of the constitutional guarantee to a speedy trial." *Crane*, 195 Ill. 2d at 48. Although it is not equivalent or coextensive to the constitutional right, section 103-5 "operates to prevent the constitutional issue from arising except in cases involving prolonged delay, or novel issues." (Internal quotation marks omitted.) *Id.* Defendant's failure to trigger the statutory speedy-trial clock does not defeat his constitutional claim, but it diminishes the weight of his assertion-of-right argument as to any post-arrest delay.

¶ 36                    d. Prejudice to defendant because of the delay

¶ 37        Lastly, we assess the prejudice factor in light of the interests the speedy-trial right was designed to protect. *People v. Echols*, 2018 IL App (1st) 153156, ¶ 38. These interests include (1) preventing undue and oppressive pretrial incarceration, (2) minimizing the anxiety and concern that accompanies public accusations, and (3) limiting the possibility that the defense will be impaired. *Id.* The impaired-defense interest is "the most serious because a defendant's inability to adequately prepare his case skews the fairness of the entire system." (Internal quotation marks omitted.) *Id.*

¶ 38        Defendant has failed to make a showing of prejudice. He identifies no impairment to his defense caused by the delay. Moreover, he was not subjected to undue and oppressive pretrial incarceration, having spent only a few days in custody before the court granted him pretrial release. Defendant nonetheless argues the 40-month postindictment delay demonstrates *actual* prejudice because "[t]here is no indication in the record here that [defendant] was actively avoiding arrest." While we agree that a 40-month delay is presumptively prejudicial, a showing of actual prejudice based only on duration cannot be met by an undeveloped record. Under plain-error review, defendant bears the burden of persuasion (*Lewis*, 234 Ill. 2d at 43), and that burden is not met by

10

pointing to gaps in the record. See *People v. Hunt*, 234 Ill. 2d 49, 58 (2009) ("Any doubts stemming from an inadequate record will be construed against the appellant."). Thus, the prejudice factor does not weigh in defendant's favor.

¶ 39 On balance, the record fails to clearly show a violation of defendant's constitutional right to a speedy trial. See *Hillier*, 237 Ill. 2d 539, 549. His plain-error argument necessarily fails.

¶ 40         3. *Special Concurrence*

¶ 41 Our specially concurring colleague would reach a result neither party advanced on appeal. He would decline to resolve the fully briefed speedy-trial contention and instead allow defendant the opportunity, on collateral review, to develop a factual record on the postindictment delay. *Infra* ¶ 56. We respectfully disagree with that course of action. We further note our colleague identifies no authority justifying the deferral of a freestanding speedy-trial claim to collateral review.

¶ 42       B. Constitutionality of UPWF

¶ 43       1. *United States Constitution*

¶ 44 Defendant contends section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2020)) is facially unconstitutional pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Statutes are presumptively constitutional. *People v. Wells*, 2023 IL App (3d) 210292, ¶ 19. A facial challenge to a statute can only overcome this presumption by showing the statute is unconstitutional under any set of circumstances. *People v. Hilliard*, 2023 IL 128186, ¶ 21. A defendant may challenge the facial constitutionality of a statute at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32.

¶ 45 In *Bruen*, the Supreme Court analyzed a New York statute, which regulated the ability of its citizens to carry firearms. *Bruen*, 597 U.S. at 12-14. In its ruling, the Court set forth a two-prong

11

test for evaluating the constitutionality of statutes regulating firearms. *Id.* at 26-27. The first step in the analysis is to determine whether the conduct falls within the plain text of the second amendment. *People v. Travis*, 2024 IL App (3d) 230113, ¶ 25. If it does, courts must then evaluate "whether there is a justification for the regulation rooted in history and tradition." *Id.* ¶ 24.

¶ 46 In *Travis*, we resolved *Bruen*'s first step by concluding the disarmament of felons under section 24-1.1(a) of the Code falls within the plain text of the second amendment. *Id.* ¶ 25. The plain language of the second amendment guaranteeing the "right of the people to keep and bear Arms" covers the possession of firearms and does not exclude felons from "the people" to whom it applies. U.S. Const., amend. II; *Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33. Additionally, the United States Supreme Court explained in *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008), that "the people" includes "all Americans." Accordingly, we reaffirm our conclusion that the second amendment applies to all people including felons.

¶ 47 Regarding the second prong, *Bruen* only requires the State "identify a well-established and representative historical *analogue*, not a historical *twin*," to meet its burden that the challenged regulation is rooted in the nation's historical tradition of firearm regulation. (Emphases in original.) *Bruen*, 597 U.S. at 30 ("[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."). Our historical analysis in *Travis* demonstrated the disarmament of felons under section 24-1.1(a) of the Code based on their criminal convictions is consistent with our country's "history and tradition dating back to the founding era of identifying dangerous individuals and disarming them." *Travis*, 2024 IL App (3d) 230113, ¶ 33. Like its historical antecedents, section 24-1.1(a) imposes practically no burden on the second amendment rights of law-abiding citizens. *Id.* Accordingly, we conclude

section 24-1.1(a) of the Code is facially constitutional under the second amendment of the United States Constitution.

¶ 48                                    2. *Illinois Constitution*

¶ 49       Next, defendant argues section 24-1.1(a) of the Code is facially invalid under article I, section 22 of the Illinois Constitution. The Illinois Constitution provides that, "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. As discussed in *Travis*, we reject defendant's claim that by extending the right to bear arms to "the individual citizen" the Illinois Constitution provides greater protection than the right granted to "the people" under the second amendment. *Travis*, 2024 IL App (3d) 230113, ¶¶ 40-42. The phrase "individual citizen" was intended to broaden the scope of the type of arms covered by expanding it beyond weapons only traditionally used by a regulated militia. *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984). Notably, article I, section 22, also provides the state with an immense degree of control over firearms by explicitly limiting the right to bear arms subject to the police power. Ill. Const. 1970, art. I, § 22. The disarmament of felons under section 24-1.1(a) of the Code is a proper exercise of this power, which contemplates legislation intended to prohibit or restrict anything that presents a danger to the welfare of the people. *Travis*, 2024 IL App (3d) 230113, ¶¶ 41, 43. Thus, we likewise conclude section 24-1.1(a) of the Code is facially constitutional under article I section 22 of the Illinois Constitution.

¶ 50                                    III. CONCLUSION

¶ 51       For the reasons stated, we affirm the judgment of the circuit court of La Salle County.

¶ 52       Affirmed.

¶ 53       JUSTICE HOLDRIDGE, specially concurring:

13

¶ 54   While I agree with the majority's *Bruen* analysis and conclusion that this case must be affirmed, I write separately as I would find that the defendant's constitutional speedy trial right argument is better suited for collateral proceedings.

¶ 55   Initially, I agree with the majority that the defendant has not waived this issue where he has not intentionally relinquished a known right. However, I take issue with the majority's cursory finding that the defendant forfeited his constitutional speedy trial claim. As the majority notes, preservation of an issue requires a contemporaneous objection and raising the issue in a posttrial motion. *Supra* ¶ 18. Here, the defendant made a speedy trial request multiple times and referenced both a speedy trial violation and a constitutional violation in his posttrial motion. This was sufficient to preserve the issue for our review. Curiously, the majority recognizes that this self-represented defendant would not know that his constitutional speedy trial right extends to postindictment, pre-arrest delays (*supra* ¶ 17) but in the next paragraph requires the defendant to specifically challenge this unrecognized postindictment delay (*supra* ¶ 18). The majority's holding imposes the additional requirements of eloquence and deliberate language on the self-represented defendant, which we often do not even foist on an attorney. Though specificity in an objection or motion may be preferred, it is not always required to preserve an issue for appeal. See *People v. Mohr*, 228 Ill. 2d 53, 65 (2008); *People v. Pasch*, 152 Ill. 2d 133, 168 (1992); *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65; *People v. Hauck*, 2022 IL App (2d) 191111, ¶ 33.

¶ 56   Whether or not the defendant preserved the issue, I would find that it is better suited for collateral review. As noted (*supra* ¶ 22), upon a finding of a presumptively prejudicial delay, we then must balance the reasons for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant. The 40-month delay was presumptively prejudicial and required the balancing of the rest of the factors. *Supra* ¶ 24. However, as the majority notes, the record is

silent regarding the reasons for the delay (*supra* ¶ 27), which is a major factor in determining whether the defendant's speedy trial rights were violated. Facts regarding what the defendant knew at the time of charging and the reason for the lengthy postindictment delay are necessary for us to determine whether the factors should weigh against the State or the defendant. For example, a defendant who is unaware charges have been filed against him is less likely to have the failure to demand a speedy trial or his decision to leave the jurisdiction weighed against him. See *Doggett v. United States*, 505 U.S. 647, 652-54 (1992); *People v. Belcher*, 186 Ill. App. 3d 202, 203-04 (1989). Additionally, the determination of whether a lengthy delay is justified can be dispositive in whether the defendant suffered prejudice or had his constitutional right violated. Considering the record before us, any determination of the speedy trial issue would be speculative. Therefore, I would find that the defendant's constitutional speedy trial right is better suited for collateral review where he would have the opportunity to further develop the record for his claim. See *People v. Gunnell*, 2021 IL App (2d) 190234-U, ¶ 55; *People v. Landerman*, 2018 IL App (3d) 150684, ¶ 62.

¶ 57 The majority blames the defendant for the silent record based on his burden under the plain error doctrine. I believe the majority misconstrues the standard under the plain error doctrine. The burden of persuasion is separate from the burden of producing evidence. See *People v. Ziltz*, 98 Ill. 2d 38, 43 (1983). Thus, the defendant is required to persuade us based on the record available; there is no requirement for a defendant to present a record where there is none. I fail to see how we could require the defendant to compel the State to discuss the reasons for the delay, outside of the postconviction context.